IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:24-cr-015 |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT EUGENE SMITH, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

**INTRODUCTION**

On February 13, 2024, the government obtained an indictment charging Scott Smith with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), on September 25, 2023 (count one) and September 26, 2023 (count six); possession with intent to distribute 5 grams or more of methamphetamine on September 26, 2023, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (count two); possession with intent to distribute a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (count three); possession with intent to distribute a mixture and substance containing marijuana on September 26, 2023, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (count four); and possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking crime on September 26, 2023, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii) (count five). A notice of prior serious drug felony conviction was also filed, pursuant to 21 U.S.C. § 851, along with notices of forfeiture under 21 U.S.C. § 853, Federal Rule of Criminal Procedure 32.2(a), 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c) concerning three firearms and ammunition.

On September 23, 2024, Mr. Smith pled guilty to counts one, two, five, and six of the indictment and consented to the forfeiture, pursuant to a written plea agreement that calls for dismissal of the remaining counts at the time of sentencing. The plea agreement was entered into under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, with the parties jointly agreeing that a sentence in the range of 180 to 360 months of imprisonment would be appropriate in the case. The government also agreed to withdraw the notice of enhancement based on a prior serious drug felony conviction as part of the agreement, the parties made joint recommendations as to the sentencing guideline calculations in the case, and Mr. Smith agreed to certain appellate right waivers. The Court accepted Mr. Smith's guilty plea and adjudicated him guilty on October 7, 2024.

The presentence report drafter determined that Mr. Smith's base offense level under the advisory sentencing guidelines is 33, because of firearm guideline cross references to the attempted murder guideline, as agreed to by the parties in the plea agreement.[1] (PSR ¶36). Because Mr. Smith pled guilty to a § 924(c) offense, no firearm related adjustments were applicable. (PSR ¶37). The parties agreed that the law enforcement officer official victim applies, resulting in a six-level increase to the offense level. (PSR ¶38). After applying a three-level reduction for acceptance of responsibility (PSR ¶¶44–45) and calculating Mr. Smith's criminal history category as VI (PSR ¶75), the presentence report drafter found a total offense level of 36 and an advisory sentencing guideline range of 324 to 405 months of imprisonment, plus the mandatory consecutive 120 months for the § 924 offense, resulting in an effective

---

[1] The firearm offenses and the drug offenses all group together under the advisory sentencing guidelines because they reference and incorporate related conduct. (PSR ¶¶33–34). The § 924(c) count of conviction is an outlier offense that must always be a consecutively imposed sentence and is excluded from the grouping rules. (PSR ¶35).

2

advisory sentencing range of 444 to 525 months of imprisonment. (PSR ¶148). There are no objections to the advisory guideline calculation, and the only question remaining before the Court is whether to accept the plea agreement, and then what sentence to impose within the agreed-upon range of 180 to 360 months of imprisonment pursuant to the factors in 18 U.S.C. § 3553(a). Mr. Smith respectfully argues that there are factors that suggest a sentence at or near 180 months is sufficient in this case.

## ARGUMENT

On September 26, 2023, a Polk County Deputy Sheriff attempted to initiate a traffic stop on a Honda Civic being driving by Scott Smith. (PSR ¶17). Mr. Smith did not stop, and instead drove into the parking lot of the Budget Inn & Suites Hotel in Des Moines. *Id*. He jumped from the Civic and ran to a side door to the hotel. *Id*. As the Deputy followed, Mr. Smith fired three rounds from a .45 caliber Llama pistol toward the Deputy and his vehicle, one of which struck an RV parked in the hotel parking lot behind the Deputy's patrol car. (PSR ¶¶17–18).

Mr. Smith than ran to Room 202, which he entered with a key card. (PSR ¶19). He dumped the Llama pistol in an open backpack in the room, and then climbed out the window and onto the roof of the hotel. (PSR ¶¶19–20). He discarded his cell phone in the courtyard of the hotel, and then went back inside the building as law enforcement officers were responding to the scene and saw him. (PSR ¶20). He went to the office area of the hotel, where he hid in a void area in a wall. *Id*. Law enforcement officers cleared the hotel, ascertained that he was in the office and arrested him without further incident. Mr. Smith had 39 fentanyl pills and $640 in cash on his person at the time. (PSR ¶21).

A search warrant was subsequently executed on the Honda Civic driven by Mr. Smith, which located 39.91 grams of actual methamphetamine, 117.46 grams of marijuana, 4.62 grams

of a fentanyl/xylazine mixture, 1.38 grams of cocaine, .55 grams of psilocyn mushrooms, a digital scale, and a stolen 9mm pistol. (PSR ¶22). Subsequent forensic investigations matched shell casings from the fired shots to the Llama .45 caliber pistol located in room 202, and Mr. Smith's DNA was found on the pistol as well. (PSR ¶¶19, 23). Surveillance footage from a Baymont Hotel in Des Moines from September 25, 2023, showed Mr. Smith discarding a stolen Ruger .22 caliber pistol into a dumpster, and Mr. Smith leaving the hotel driving the Honda Civic. (PSR ¶16). Mr. Smith's cell phone was recovered from the courtyard, and found to contain pictures of firearms in it, including ones that look like the firearms recovered in this case, along with messages consistent with persons seeking drugs from Mr. Smith. (PSR ¶25).

In reaching the plea agreement and sentencing range in this case, the parties took numerous factors into account. One major factor was that Mr. Smith provided a post-*Miranda* interview on September 26, 2023, prior to being taken to the jail, during which he indicated he was grateful that the Deputy was not hurt, admitted that he was extremely high on drugs on September 26, 2023, had nothing personal going against the Deputy, and asked the interviewing Detective to apologize to the Deputy for him. *See* Def.'s Ex. A. He has continued to be remorseful for his actions over the past year and a half. He pled guilty to assault with intent to inflict serious injury in state court three and a half months after the events of this case,[2] and entered into plea negotiations immediately with the government after he appeared via writ of habeas corpus ad prosequendum on February 28, 2024. (PSR ¶71). This culminated with the signing of the finalized plea agreement on September 6, 2024, reflecting a just resolution of a complex case, and avoiding a significant amount of potential litigation.

---

[2] Mr. Smith received a 112-day sentence on this charge, which should be credited toward the sentence imposed in this case pursuant to USSG §5G1.3(b)(1).

In addition, in reaching the plea agreement, the government consulted with the Deputy Sherriff who was fired at by Mr. Smith, to ensure his acquiescence to this manner of resolving the case. Mr. Smith has also been agreeable to continuing hearings so the Deputy can attend and fully participate in the case without needing to alter his work or personal schedule. The parties also selected a series of charges to fully and accurately encapsulate Mr. Smith's offense conduct and agreed on sentencing guideline recommendations that were incorporated into the plea agreement. The parties were also cognizant that the § 924 offense would operate to somewhat distort the advisory guideline range in the case, given its mandatory consecutive nature and the fact that by its nature it overlaps with offense conduct and specific offense characteristics underlying the remainder of the advisory guideline calculation. All told, the given the unique facts and circumstances of this case, as tempered by Mr. Smith's approach to it and continuing indication of remorse and acceptance of responsibility for his offenses, the parties believe a sentence within the range recommended in the plea agreement is "sufficient, but not greater than necessary" under the 18 U.S.C. § 3553(a) factors.

Indeed, the Court should take the mandatory consecutive nature of count five into account when assessing what overall sentence to impose in this case. *See Dean v. United States*, 137 S. Ct. 1170, 1176–78 (2017) (holding that nothing in 18 U.S.C. § 3553(a) or 18 U.S.C. § 924(c) prohibits a sentencing court from considering the mandatory minimum under § 924(c) when calculating an appropriate sentence for a predicate offense). Notably, the advisory guidelines have not been amended to take the holding of *Dean* specifically into account when guiding the Court's exercise of sentencing discretion, which results in it having an over-impact on the advisory guideline sentencing range in this case. The broad swath of discharging a firearm in furtherance of a drug trafficking crime overlaps in this case with the cross reference to

the attempted murder guideline, in that the discharge of the firearm is an element of both the acts. Although the advisory guidelines do not take that overlap into account, the Court certainly can when deciding whether to accept the plea agreement in this case and where in the plea agreement range to select a sentence.

Furthermore, although encompassed within the grouping rules of the advisory guidelines and the attempted murder cross reference the parties agree applies, the actual drug quantity involved in the case is relatively small, particularly compared to the more typical federal drug case in this district. The final presentence report attributes 39.91 grams of actual methamphetamine to Mr. Smith, which would fall at a base offense level of 28 under the drug sentencing table. The amount of other drugs in the case are not significant enough to impact the guideline calculation, and if charged alone would fall at a drug base offense levels in the low teens. It is clearly the discharge of the firearm that is the most significant offense characteristic in the case for advisory guidelines purposes and overall sentencing purposes.

But notably, despite Mr. Smith falling into criminal history category VI based on having eighteen scoring criminal history points, this is the first act of direct violence he appears to have ever committed. While he does have a prior conviction for possessing a firearm from 2000, when he was nineteen years old, his criminal history otherwise mainly consists of drug and drug-related crimes and crimes related to trying to flee from law enforcement officials—like interference with official acts and eluding. (PSR ¶¶48–54, 56, 58–59, 61–64, 70). He also has a history of escapes for walking away from non-secure halfway house type facilities, along with two theft convictions. (PSR ¶¶47, 55, 57, 60, 65, 67–69). But overall, his criminal history shows him to be a runner and not a fighter, and that he is mainly a drug addict who sells to help support himself and feed his habit. His history further supports the understanding that he was out of his

mind on a drug binge when he engaged in the direct act of violence in this case. *See also* Def.'s Ex. B (Polk County Jail Intake Drug Screen).

Finally, the Court must consider Mr. Smith's individual history and characteristics under the 18 U.S.C. § 3553(a) factors when determining what sentence should be imposed. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). Mr. Smith was exposed to chaos from a young age, as his father was sometimes violent, and cheated on his mother until their separation when Mr. Smith was around seven years old. (PSR ¶84). Mr. Smith recalls his father later setting the house on fire after removing the children and leaving his mother inside, which resulted in his father being sentenced to life imprisonment for kidnapping. (PSR ¶¶84, 90). He lived between his mother and grandmother's home from ages six to eighteen, but his basic needs were usually met, although food sometimes was scarce. (PSR ¶¶85–86). When he would get in trouble with his mother, he would go reside with his grandparents. (PSR ¶85). But his grandparents' home turned into a "crack house," and there were often strangers present selling and smoking crack cocaine, which made staying there a traumatic experience for Mr. Smith as a child. *Id*. His grandparents' home lacked structure and rules, allowing Mr. Smith to stay out all hours and be exposed to money and drugs from a very young age, and also to him being sexually abused between the age of twelve and sixteen by women who frequented the house for drugs. (PSR ¶¶85–86). He wound up dropping out of high school in eleventh grade[3] after his drug problems

---

[3] Mr. Smith later obtained his GED from Kirkwood Community College while incarcerated in 2001. (PSR ¶131).

led to juvenile legal problems and then to adult legal cases after he turned eighteen. (PSR ¶¶ 47–49, 130).

Given his childhood environment, it is unsurprising that Mr. Smith suffers from both mental health and severe substance use problems. He first thought of harming himself when he was twelve years old, after feeling like nobody cared about him. (PSR ¶109). He started using marijuana at around that same time, and has consistently smoked daily ever since when it has been available to him. (PSR ¶115). His exposure to cocaine led to him starting to use it when he was fifteen, and he would snort it every day when he was not incarcerated up until 2016. (PSR ¶116). He similarly started smoking PCP daily beginning from age sixteen until 2018, and has used psychedelic mushrooms very few weeks when in the community up until his arrest in this case. (PSR ¶119). Mr. Smith first tried methamphetamine when he was thirty-five, and smoked or injected it daily up until his arrest in this case. (PSR ¶122). By age forty-one, he was mixing heroin with his methamphetamine injections, and used it up to the day of his arrest even after he nearly died from an overdose. (PSR ¶123). He has also tried LSD, used ecstasy daily for two years in his late twenties, smoked K2 daily from age thirty-one to thirty-five, and used pain pills whenever they were available to him. (PSR ¶¶118, 120–121, 124). Methamphetamine in particular had a drastically negative affect on him, as it would prevent him from sleeping, made him angry at times, sometimes caused hallucinations, and he would forget to eat. (PSR ¶126). He was on a drug binge leading up to the events in this case, and spent weeks after his arrest going through withdrawals. *Id*. He recognizes that drugs have "ruined his life" in a variety of ways, including their role in this case both in terms of the crimes committed and their influence on him and impact on his behavior. (PSR ¶¶128, 135). He wants drug treatment within the Bureau of Prisons to the greatest extent possible.

Lacking sufficient resources, Mr. Smith has used drugs to self-medicate—often unsuccessfully—when in the community. (PSR ¶108). In the weeks leading up to the offense in this case, he felt like his life was "unraveling," as he had a fight with his girlfriend and was heavily using drugs. (PSR ¶109). He has received some mental health care while incarcerated over the years, which has resulted in various diagnoses, including schizophrenia, bipolar disorder, depression, and anxiety in the past. (PSR ¶¶106–107, 110). Diagnoses when he was much younger included antisocial personality disorder and adjustment disorder, but the more current diagnoses reflect depression and anxiety, and a related adjustment disorder with mixed anxiety and depressed mood. (PSR ¶¶107, 110–111). He is currently on psychiatric medications for anxiety and depression that he believes are helping him, and he welcomes access to continuing mental health resources and care in the future. (PSR ¶¶107, 112).

Scott Smith is now forty-three years old, and suffers from diabetes, high blood pressure, and high cholesterol. (PSR ¶¶84, 103). He is on several medications for his physical health, and is scarred and suffers back spasms about twice a year stemming from being stabbed in 2022. (PSR ¶¶101, 104–105). He has an adult son who was born non-verbal and quadriplegic, for whom he paid child support and wishes to have more contact with. (PSR ¶98). He has four other biological children, and maintains a good relationship with them and their mothers. (PSR ¶¶96–97). Reflecting his own struggle with methamphetamine, his current girlfriend is residing at the House of Mercy while she battles her own methamphetamine addiction. (PSR ¶95). He has no history of violence toward his partners or children, which again shows that the direct violence in this case is dissimilar from Mr. Smith's history and characteristics.

The overarching question is what sentence is "sufficient, but not greater than necessary" in this case, given the nature and circumstances of this offense, Mr. Smith's personal history and

9

characteristics, and the remaining factors of 18 U.S.C. § 3553(a). *See Kimbrough*, 552 U.S. at 101 (stating that 18 U.S.C. § 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing."); *accord Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (emphasizing that the law instructs sentencing courts to impose sentences that are not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a)). Mr. Smith understands and has always accepted that he faces a significant imprisonment sanction for his crimes. Whatever sentence the Court imposes in this case will be the longest he has ever served, by several orders of magnitude.

By design, there is no "short" sentence within the sentencing range negotiated by the parties in the plea agreement. But it also does not necessarily follow that a sentence at or near the top of that range is necessary, under the circumstances of the case and given Mr. Smith's individual history and characteristics. Even the 180-month bottom of the negotiated sentencing range is a lengthy term of imprisonment, that will have significant deterrent force on both Mr. Smith and any other person that might consider committing similar offenses. And the charges in this case will prevent Mr. Smith from being eligible for all the early release programs that can apply within the Bureau of Prisons, resulting in more time in prison for him. He also is currently serving state parole revocation sentences and has not yet even officially commenced his federal term of imprisonment, which the Court can take into account in fashioning and determining the sentence to impose in this case. By any measure, Mr. Smith will be a much older man when he released from the Bureau of Prisons, and less likely to recidivate. This is even more true if he can utilize his time in prison to fully overcome his addiction problems and keep his mental health stable, which is his ultimate goal.

Ultimately, the Court has wide discretion to decide what sentence is "sufficient, but not greater than necessary" under the statutory sentencing factors for Mr. Smith in this case. While his crimes are very serious, the advisory sentencing guideline range recommends a term of imprisonment that is greater than necessary to achieve the goals of 18 U.S.C. § 3553(a), given the facts of this case and Mr. Smith's individual history and characteristics, and a sentence near the bottom of the range negotiated by the parties in the plea agreement would be sufficient to fulfill the sentencing goals of the statute. For all the reasons discussed herein and noted in the record, Mr. Smith respectfully argues that the Court should accept the Rule 11(c)(1)(C) plea agreement and that a sentence near the low end of the sentencing range in the agreement should be imposed in this case.

Respectfully Submitted,

*/s/ Joseph D. Herrold*
Joseph D. Herrold, Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: joe_herrold@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2025, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Morgan Conn*, Paralegal